DONNA LAPER FAUGHT v. WILLIAM FLENER FAUGHT

No. 8314DC353

(Filed 6 March 1984)

1. **Divorce and Alimony § 21.5— willfulness of nonpayment—contempt**

   Defendant could properly be found in contempt of court under G.S. 5A-11(a)(3) for failure to comply with a court's order concerning alimony payments even though the alimony payments and various catch-up payments

totalled nearly 100% of his monthly income where defendant failed to pay arrearages and where defendant assumed new financial responsibilities in terms of a new wife, defendant's new wife's automobile, defendant's adult daughter's automobile, semi-annual payment for homeowner's insurance on residence purchased and owned by the defendant's new wife, monthly payments on a residential lot owned and purchased by defendant and defendant's new wife, and monthly payments to EAB on line of credit. To hold contrary would permit a supporting spouse to avoid his or her obligations by the simple means of expending assets as he or she pleased, and then pleading inability to pay support, thereby insulating him or herself from punishment by an order of contempt.

2. **Divorce and Alimony § 19.4— modification of alimony decree—increase in monthly living expenses—sufficiency of evidence**

There was sufficient evidence from which the trial judge could have found and concluded that plaintiff's monthly living expenses had risen from 1979 to 1982 in an action brought by plaintiff to increase the amount of her alimony payments among other things.

3. **Divorce and Alimony § 21.4— assignment of Army retirement benefits in alimony action proper**

A trial judge had the authority to compel defendant to execute an assignment of his United States Army retirement benefits pursuant to 10 U.S.C. § 1408 (1983) even though the federal statute became effective after the filing of the trial judge's order in the case at bar. 10 U.S.C. § 1408(d) does not deprive the trial judge of authority to order an assignment of benefits until notice is served upon the Secretary of the Army.

APPEAL by defendant from *LaBarre, Judge*. Order entered 18 June 1982 in DURHAM County District Court. Heard in the Court of Appeals 17 February 1984.

Defendant-husband and plaintiff-wife were married on 22 June 1952 and separated in May, 1979. The parties were subsequently divorced and plaintiff's motion for permanent alimony was granted in an order entered 28 December 1979. Under the order, defendant was required to pay alimony of $1,260.00 per month, maintain health benefits, transfer certain property, and pay plaintiff's attorney's fees. Defendant's appeal from the order was dismissed by the North Carolina Court of Appeals on 5 October 1981 for failure to perfect the appeal. Defendant then discharged his former attorney and retained his present counsel to represent him in the ongoing series of actions between defendant and plaintiff. On 29 October 1981, defendant was found in contempt of court for, *inter alia*, failing to make nearly $25,000.00 in alimony payments to plaintiff due under the order of 28 Decem-

ber 1979. During the early spring of 1982 plaintiff filed motions for an increase in alimony and an order compelling defendant to execute an assignment of his income, and defendant filed a motion to reduce alimony payments. Following a hearing on the motions in April, 1982, the trial court held defendant in contempt, but continued punishment on the condition that defendant make certain payments. The order of the trial court, filed 18 June 1982, also ordered defendant to make an assignment to plaintiff of part of his income, and granted plaintiff's motion for an increase of alimony. The trial judge made, in pertinent part, the following findings of fact and conclusions of law:

. . .

2. That by . . . the Order entered in this cause on November 19, 1981, the defendant should have paid the following sums to or on the account of the plaintiff on the dates specified:

(a) $5000 on or before December 19, 1981.

(b) $400 to plaintiff's attorneys on or before December 19, 1981;

(c) $5500 in monthly installments against alimony arrearages;

(d) $6595 in regular alimony payments;

(e) $1500 to plaintiff's attorneys on or before January 19, 1982.

3. That since the Order entered on November 19, 1981, the defendant has paid the following monies to or on behalf of the plaintiff pursuant to that Order:

(a) $400 to plaintiff's attorneys;

(b) $100 to plaintiff's attorneys against the $1500 amount ordered;

(c) $7658 to plaintiff against alimony arrearages and current alimony payments.

4. That at the time of the initial hearing in this cause held on November 19, 1979, the defendant was employed as a

senior Army instructor for the Junior ROTC Program at South Brunswick High School and was also receiving military retirement benefits as a Retired Colonel in the United States Army. That at that time the Court found his net income from these sources to be $2600 per month.

5. That at the last hearing in this cause on October 29, 1981, the Court found as a fact . . . [t]hat the monthly income received by the defendant from these sources totalled $3468.92.

. . .

6. That, at the time of this hearing, . . . the total monthly income received by the defendant from these sources now totals $3848.33.

. . .

7. . . . . That, of the monthly expenses offered into evidence by the defendant, the following concern obligations which were incurred by the defendant after the original award of alimony entered in this cause: monthly payments for new wife's automobile; defendant's automobile; and defendant's adult daughter's automobile; semi-annual payment for homeowner's insurance on residence purchased and owned by the defendant's new wife; monthly payments on residential lot owned and purchased by the defendant and defendant's new wife; monthly payments to EAB on line of credit. That the combined monthly payments made on these obligations total approximately Nine Hundred Ninety Dollars ($990.00) per month.

8. That the defendant and his new wife are presently the owners of a residential lot. . . . That the fair market value of the lot is $13,500 but it is subject to a note and deed of trust which has an outstanding balance of $6,500.

9. That the defendant had the financial means and abilities since the entry of the Order in this cause on November 19, 1981, to make all of the payments required of him under that Order. That the defendant has willfully and deliberately failed and refused to pay monies required of him under that Order totalling $10,837.

. . .

11. That at the time the defendant was found to have abandoned the plaintiff in May of 1979, the plaintiff was unemployed and had been so for approximately two (2) years. That prior to that time, the plaintiff had been employed as a school teacher in the Virginia public school systems.

12. That, at the time of the original hearing in this matter on November 19, 1979, the plaintiff was 49 years of age, unemployed, and diagnosed as suffering from, among other things, phlebitis and degenerative arthritis of the spine, hips and knees.

13. That the plaintiff is presently employed by the Chapel Hill School System teaching night courses in bookkeeping and office management two nights a week from which she received a gross compensation of $660 per year.

14. That since the original hearing in this cause, the plaintiff has submitted applications for [various] teaching positions. . . . That with the exception of her present teaching position with the Chapel Hill School System and a brief tenure as a substitute teacher with the Wake County Schools, the plaintiff has been unable to find employment as a teacher.

15. That since the original hearing in this cause, the plaintiff has attempted employment with Duke University as a secretary; Durham Exchange Club Industries, Inc., as a secretary; and the Chapel Hill-Carrboro YMCA as office manager for the campaign fund.

16. That the plaintiff testified that she presently suffers from phlebitis and degenerative arthritis, and has recently suffered an impairment of vision in one eye as a result of a detached retina. That the plaintiff testified that she is undergoing medical treatment for each of these physical problems, but presented no medical evidence as to the condition of her eye.

. . .

17. That the Court . . . does not find as a fact that she is medically unfit to undertake active employment.

Faught v. Faught

. . .

18. That at the original hearing in this cause, the plaintiff was found to have reasonable monthly needs totally $1542 to maintain herself according to the station in life to which she had become accustomed while living with the defendant.

19. That the amount of money that the plaintiff now needs to meet her fixed monthly financial obligations and to maintain herself according to the station in life to which she had become accustomed while living with the defendant is $1901.62.

. . .

BASED UPON THE FOREGOING FINDINGS OF FACT, THE COURT CONCLUDES AS A MATTER OF LAW as follows:

1. That the defendant is in further contempt of this Court for having willfully and deliberately failed to make the payments to or on behalf of the plaintiff required of him under the prior Order entered in this cause on November 19, 1981, despite having the ability to do so.

. . .

2. That in order to insure that the monthly payments required of the defendant for present alimony are made in a timely fashion, the defendant should execute an Assignment of Income covering earnings or benefits received by him from the United States Army and/or the Brunswick School System sufficient to meet those monthly payments as hereinafter ordered.

. . .

3. That the lump-sum payment of . . . ($5,000.00) previously ordered against alimony arrearages by that Order dated November 19, 1981, should be paid within . . . (30) days of the date of this Order.

4. That the outstanding balance of . . . ($1,400.00) in attorney's fees required of the defendant under the Order dated November 19, 1981, together with additional attorney's fees ordered hereinafter, should be paid on or before October 1, 1982.

. . .

5. That the monthly payments against [the $24,241.88 in] alimony arrearages previously required of the defendant under the Order dated November 19, 1981, should be reduced from . . . ($1,100.00) per month to . . . ($750.00) per month effective May, 1982.

6. That, as a result of the increased reasonable financial needs of the plaintiff and the increased earnings of the defendant since the original Order entered herein on December 29, 1979, a substantial change of circumstances has occurred, which justifies an increase in the alimony payments required of the defendant on behalf of the plaintiff. That the defendant has the present financial means to pay the plaintiff alimony in the amount of ($1,419.00) per month, and the alimony payment required of the defendant should be increased to that figure.

. . .

7. That there has been no substantial change of circumstances since the original Order entered herein on December 29, 1979, justifying a decrease in the alimony payments of the defendant on behalf of the plaintiff.

. . .

8. That the plaintiff is unable to defray her reasonable attorney's fees incurred in connection with this action and is entitled to the award of a reasonable attorneys fee to be paid by the defendant.

. . .

9. . . . That based upon all of the facts, the Court concludes that the reasonable value for the services rendered by the plaintiff's attorneys in seeking the enforcement of the prior Orders of this Court is . . . ($1500.).

. . .

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

1. That the defendant is found to be in further contempt of this Court under North Carolina General Statutes § 5A-11 (a)(3) as a result of his willful and deliberate disobedience of the Order entered in this cause on November 19, 1981. That prayer for judgment for punishment under North Carolina General Statutes § 5A-12 for this most recent incident of contempt, as well as the contempt finding entered on November 19, 1981, is continued on the following conditions:

. . .

(a) That the defendant pay the plaintiff . . . ($5,000.00) against arrearages owed under prior orders within . . . (30) days of the date of this Order.

(b) That the defendant pay plaintiff's attorneys, . . . ($1,400.00) for attorney's fees awarded under the Order dated November 19, 1981, on or before October 1, 1982.

(c) That the defendant pay the plaintiff . . . ($24,241.88), representing the balance of arrearages owed for alimony under past orders, together with interest at the legal rate, in monthly installments of . . . ($750.00), beginning May 15, 1982, and on the 15th day of each month thereafter, . . . .

(d) That the defendant pay the plaintiff . . . ($1,419.00) per month, beginning May 15, 1982, and on the 1st of each month thereafter until otherwise modified by this Court, as permanent alimony.

. . .

(e) That the defendant pay the plaintiff . . . ($167.55) representing one-half (1/2) of loan payments received by Michael Faught and not forwarded to the plaintiff pursuant to prior Orders within . . . (30) days of the date of this Order.

. . .

2. That the defendant execute an Assignment of Income in favor of the plaintiff, covering earnings or benefits received by him from the United States Army, Veterans Administration and/or Brunswick County School System in an amount sufficient to meet the present monthly alimony payments . . . within . . . (30) days of the date of this Order.

. . .

3. That the defendant pay to the plaintiff's attorneys, . . . ($1500.) representing reasonable legal fees incurred by the plaintiff in connection with compelling enforcement of the prior Orders of this Court, on or before October 1, 1982.

. . .

From entry of the order increasing alimony, holding defendant in contempt, and requiring payment of attorneys' fees and an assignment of defendant's income, defendant appealed.

*Maxwell, Freeman, Beason and Morano, P.A., by Homa J. Freeman, Jr. and James B. Maxwell, for plaintiff.*

*McCain & Essen, by Grover C. McCain, Jr. and Jeff Erick Essen, for defendant.*

WELLS, Judge.

We note at the outset that defendant has failed to include in his brief exceptions supporting his assignments of error, a violation of Rule 28(b)(5) of the Rules of Appellate Procedure. Such error normally constitutes an abandonment of the omitted exceptions, but we will consider defendant's arguments on the merits through our discretionary power under Rule 2 of the Rules of Appellate Procedure.

[1]  In defendant's first assignment of error, he contends that the trial judge erred in holding defendant in contempt for his failure to comply with earlier court orders, when defendant lacked the financial ability to comply. Defendant concedes that he had the financial ability to pay the monthly alimony payments under the 1979 court order, and willfully chose not to comply, resulting in an accrual of a large arrearage. Defendant contends, however, that he is unable to pay both the monthly alimony payments and the "catch-up" payments on the arrearage, ordered in both the 1981 and 1982 contempt orders. As there is nothing in the record to show that defendant has appealed from entry of the 1981 order, the only issue before us today is the validity of the judgment entered in June, 1982.

Defendant was found in contempt of court in 1982 under N.C. Gen. Stat. § 5A-11(a)(3) (1981) which provides that "[w]illful disobedience of . . . a court's lawful . . . order" constitutes criminal contempt. Failure to comply with a court order is not willful within the meaning of the statute, however, where a defendant does not possess the means to comply, *Mauney v. Mauney*, 268 N.C. 254, 150 S.E. 2d 391 (1966). In the case at bar, defendant contends that because the alimony payments and various catch-up payments totalled nearly 100 per cent of his monthly income, his failure to comply with the court's order was not willful within the meaning of the contempt statute.

Defendant overlooks a well-established line of authority which holds that a failure to pay may be willful within the meaning of the contempt statutes where a supporting spouse is unable to pay because he or she voluntarily takes on additional financial obligations or divests him or herself of assets or income after entry of the support order. *See, e.g., Williford v. Williford*, 56 N.C. App. 610, 289 S.E. 2d 907 (1982) (supporting spouse took lower-paying job and applied salary to matters other than support obligations); *Frank v. Glanville*, 45 N.C. App. 313, 262 S.E. 2d 677 (1980) (supporting spouse failed to take steps to obtain employment which would have enabled him to meet obligations); *Bennett v. Bennett*, 21 N.C. App. 390, 204 S.E. 2d 554 (1974) (defendant spouse took lower paying job to avoid support obligations). A contrary rule would permit a supporting spouse to avoid his or her obligations by the simple means of expending assets as he or she pleased, and then pleading inability to pay support, thereby insulating him or herself from punishment by an order of contempt. Defendant's failure to comply with the alimony order was therefore willful within the meaning of G.S. § 5A-11(a)(3). Defendant's first assignment of error is overruled.

In his second argument, defendant contends that the trial judge erred by increasing instead of decreasing the alimony payments, because plaintiff had willfully failed to contribute to her own support. The trial judge found as facts that plaintiff had attempted to find work as a teacher and had held several teaching and clerical jobs and there is ample evidence to support these findings of fact. Defendant argues, however, that before ordering an increase in alimony the trial judge should have considered whether plaintiff had sought non-teaching jobs for which

she might be qualified. Defendant has not based this argument upon any assignment of error or exception in the record, and he may not raise it for the first time on appeal. Rule 10(a) of the Rules of Appellate Procedure. Defendant's assignment of error is overruled.

[2]   In his third assignment of error, defendant contends that there was insufficient evidence from which the trial judge could have found and concluded that plaintiff's monthly living expenses had risen from $1,542.00 per month in 1979 to $1,901.62 in 1982. In the 1979 order the trial court found plaintiff's reasonable financial needs to be $1,542.00 per month, but ordered defendant to pay only $1,260.00 per month in alimony. In the 1982 order, the trial court found plaintiff's current needs to be $1,901.62 per month, but ordered payments of $1,149.00 per month. Thus, the 1982 order requires defendant to pay a sum less than the reasonable needs of plaintiff conclusively established in the 1979 order. Defendant has shown no harm from these findings and conclusions. Furthermore, our review of the record persuades us that the evidence in this hearing supports the trial court's findings and conclusions as to plaintiff's present needs. On appeal, a reviewing court must affirm the findings of the court below where there is competent evidence to support them, *Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975); *Harrelson v. Insurance Co.*, 272 N.C. 603, 158 S.E. 2d 812 (1968).

[3]   In his fourth assignment of error, defendant contends that the trial judge did not have the authority to compel defendant to execute an assignment of his United States Army retirement benefits and wages received from South Brunswick High School. Defendant has waived the portion of his assignment of error dealing with the assignment of his wages from South Brunswick High School by failing to support his contention with legal arguments in his brief. Rule 28(b)(5) of the Rules of Appellate Procedure.

Under 10 U.S.C. § 1408 (1983), the Uniform Services Former Spouses' Protection Act, a supporting spouse's military retirement pay may be assigned to a dependent spouse under a valid court order. Although the federal statute became effective 1 February 1983, after the filing of the trial judge's order in the case at bar, it is clear that the federal act is to be applied retroactively to 26 June 1981, 10 U.S.C. § 1408(c)(1), *Smith v. Smith*, 458

A. 2d 711 (Del. Fam. Ct. 1983), *In re Marriage of Hopkins,* 191 Cal. Rptr. 70, 142 C.A. 3d 350 (1983).

Defendant contends, however, that even if the federal statute applies, the act cannot come into play until service upon the Secretary of the Army with a valid court order assigning defendant's military benefits. Defendant misconstrues the plain language of 10 U.S.C. § 1408(d)(1), which provides that service of a valid court order upon the proper military official is required to permit *payment* to the dependent spouse. There is nothing in the federal act which deprives the trial judge of authority to order an assignment of benefits until notice is served upon the Secretary.

Defendant's assignment of error is overruled, and the trial judge's order is

Affirmed.

Judges BRASWELL and PHILLIPS concur.